IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEREMIAH M. GREENWOOD, individually and on behalf of all other Illinois citizens similarly situated, | ) ) ) Case No. 1:22-cv-07169 |
| Plaintiffs, | ) ) ) |
| v. | ) ) Jury Trial Demanded |
| FIVE GUYS OPERATIONS, LLC, | ) ) |
| Defendants. | ) |

**CLASS ACTION COMPLAINT**

NOW COMES the Plaintiff JEREMIAH M. GREENWOOD, as a proposed class representative, by and through attorney James C. Vlahakis, and asserts the following Class Action claims against Defendant FIVE GUYS OPERATIONS, LLC ("Defendant"):

**I. Introduction & Summary of the Illinois Biometric Information Privacy Act**

1. Plaintiff is a citizen of Illinois and resides in the Northern District of Illinois.

2. Defendant is a Delaware corporation.

3. Defendant maintains a corporate office located at 2711 Centerville Road, #400, Wilmington, Delaware, 73808. Alternatively, Defendant maintains a corporate office at 10718 Richmond Highway, Lorton, Virginia, 22079

4. Defendant's registered agent for the State of Illinois is C T CORPORATION, 208 S. LaSalle Street, Suite 814, Chicago, Illinois, 60604.

5. According to the Illinois Secretary of State's website dedicated to searching corporations, Defendant's manager is FIVE GUYS HOLDINGS, INC.

6. The headquarters for FIVE GUYS HOLDINGS, INC. is located at 10718 Richmond Highway, Lorton, Virginia, 22079

7. On information and belier, Defendant's parent company is FIVE GUYS ENTERPRISES, LLC.

1

8. The Corporate headquarters for FIVE GUYS ENTERPRISES, LLC is located at 10718 Richmond Highway, Lorton, Virginia, 22079.

9. FIVE GUYS ENTERPRISES, LLC's registered agent is C T CORPORATION 4701 Cox Road, Suite 285, Glenn Allen, Virginia, 23060.

10. Plaintiff is a former shift manager of Defendant.

11. During Plaintiff's employment with Defendant, Plaintiff worked at Defendant's Berwyn, Illinois restaurant as well as a restaurant located in Wheaton, Illinois location.

12. Prior to, during and after Plaintiff's employment with Defendant, Defendant utilized a time clock system that required Plaintiff and other employees to scan and input their fingerprints or thumbprints to log in and out of Defendant's time clock system.

13. Defendant's time clock system utilized, collected and otherwise obtained the fingerprints and/or thumbprints Plaintiff and other similarly situated employees.

14. Plaintiff, individually and on behalf of putative class members, assert that Defendant violated their privacy rights as codified by the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA").

15. BIPA was enacted in 2008 for the purpose of addressing a "very serious need for protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Session No. 276.

16. BIPA's express Legislative Findings provide as follows:

> (a) The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.
>
> (b) Major national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias.

> (c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.
>
> (d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.
>
> (e) Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.
>
> (f) The full ramifications of biometric technology are not fully known.
>
> (g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

740 ILCS 14/5.

17. The Illinois Supreme Court has recognized that BIPA was enacted to preserve an individual's right to privacy and control over his/her/their biometric data:

> Through the Act, our General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information. The duties imposed on private entities by section 15 of the Act (740 ILCS 14/15 (West 2016)) regarding the collection, retention, disclosure, and destruction of a person's or customer's biometric identifiers or biometric information define the contours of that statutory right. Accordingly, when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach.
>
> * * *
>
> The Act vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent. . . . When a private entity fails to adhere to the statutory procedures, as defendants are alleged to have done here, "the right of the individual to maintain his or her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized." This is no mere "technicality." The injury is real and significant.

*Rosenbach v. Six Flags Ent. Corp.*, 432 Ill. Dec. 654, 129 N.E.3d 1197, 1206 (Ill. 2019)).

3

18. BIPA defines "Biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

19. BIPA defines "Biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

20. BIPA prohibits private entities from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's biometric information unless the private entity: (1) informs that person in writing that identifiers and information will be collected and/or stored; (2) informs the person in writing of the specific purpose and length for which the identifiers or information is being collected, stored or used; (3) receives a written release from the person for the collection of that data; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying said data. *See* 740 ILCS 14/15(a) and (b).

21. As detailed below, within the past five years (the "relevant time period"), Defendant has required its employees to use fingerprint and thumbprint technology when utilizing Defendant's time clock system.

22. Upon information and belief, Defendant's time clock system is subject to the requirements of BIPA because Defendant's biometric time clock system utilized and uploaded the unique "biometric identifiers" and "biometric information" belonging to Plaintiff and putative class members.

23. As detailed below, Defendant's time clock system required it to obtain informed written consent from Plaintiff and putative class members *before* Defendant was able to acquire or otherwise capture the "biometric identifiers" and/or "biometric information" of Plaintiff and putative class members.

4

24. As detailed below, this putative Class Action Complaint alleges that Defendant has violated Sections 15(a) and 15(b) of BIPA.

**II. Jurisdiction and Venue**

25. The Court has subject matter jurisdiction over Plaintiff's claims on the basis of diversity jurisdiction. See, 28 U.S.C. § 1332.

26. A "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between — (1) citizens of different States[.]" 28 U.S.C. § 1332.

27. Section 20(1) of BIPA provides that "[a] prevailing party may recover for each violation: ... (1) against a private entity negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater".

28. Section 20(1) of BIPA provides "[a] prevailing party may recover for each violation: ... (a) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater". 740 ILCS 10 14/20(2).

29. Given the length of Plaintiff's employment with Defendant, and number of times Plaintiff's biometric information was used by Defendant's biometric time clock system, Plaintiff could recover more than $75,000.00 in statutory damages by merely utilizing Defendant's Technology a minimum of seventy-five (75) times.

30. Additionally, the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), provides jurisdiction on the basis of a diversity of citizenship, because Defendant employed over 100 employees during relevant time period and the amount in controversy exceeds $5,000,000.

31. CAFA, in relevant part, states as follows:

> (2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of

> $5,000,000, exclusive of interest and costs, and is a class action in which—
>
>> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant[.]
>
> ***
>
> (6) In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

28 U.S.C. §§ 1332(d)(2), 1332(d)(6).

32. Plaintiff satisfies Section 1332(d)(5)(B) of CAFA because during the time relevant time period, Defendant had or has employed more than **100** employees who have utilized Defendant's biometric time clock system in violation of BIPA.

33. As alleged above, Plaintiff is citizen of the State of Illinois and Defendant is a foreign corporation with its headquarters and principal place of business located outside the State of Illinois.

34. Based upon this diversity of citizenship, Plaintiff has satisfied the requirements of Section 1332(d)(2).

35. This is a putative class action where liquidated damages for *each* violation of BIPA may result in liquidated damages of $1,000 and up to $5,000.

36. CAFA jurisdiction is satisfied pursuant to Sections 1332(d)(2) and (6) of CAFA because even if a trier of fact determines that Defendant negligently violated the requirements of BIPA, liability for 5,001 individual violations involving 100 employees would exceed $5,000,000 in damages.

37. 28 U.S.C. § 1391(b)(2) provides that "[a] civil action may be brought in – (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"

38. This Court has personal jurisdiction over Defendant because it maintains a facility in this judicial district and its business practices with this judicial district lead to the below asserted violations of BIPA.

39. Venue is proper in this judicial district, a substantial part of the events or omissions giving rise to Defendant's violations of BIPA took place within the State of Illinois and this judicial district.

40. Venue is also proper in this judicial district because Plaintiff is a citizen of the State of Illinois and Plaintiff seeks to vindicate Plaintiff's rights (and the rights of putative class members) as provided by BIPA.

41. Further, venue is proper in this judicial district because Defendant's putative class members who are all citizens of the State of Illinois.

## II. Causes of Action

### Count I – Asserting Violations of Section 15(a) of BIPA

42. Plaintiff alleges and reasserts Paragraphs 1-40 as if fully set forth above:

43. Section 15(a) of BIPA requires private employers to develop written policies regarding the retention and destruction of "biometric identifiers" and "biometric information" that employers may obtain from employees:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

740 ILCS 14/15(a).

44. "The BIPA requirement to implement data retention and destruction protocols protects a person's biometric privacy just as concretely as the statute's informed-consent regime." *Fox*, 980 F.3d at 1155. "It follows that an unlawful retention of a person's biometric data is as concrete and particularized an injury as an unlawful collection of a person's biometric data." *Id.*

45. On information and belief, Defendant violated Section 15(a) of BIPA because it appears that it has failed to develop and publish written policies regarding the retention and destruction of "biometric identifiers" and "biometric information".

46. Defendant has failed to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information" as required by 740 ILCS 14/15(a).

47. On information and belief, Defendant does not destroy "biometric identifiers" or "biometric information" after "the initial purpose for collecting or obtaining such identifiers or information has been satisfied" as required by 740 ILCS 14/15(a).

48. On information and belief, Defendant has failed to develop, publicly disclose, and otherwise comply with a data-retention schedule and guidelines for the permanent destruction of "biometric identifiers" and "biometric information".

49. Defendant's failure to comply with BIPA's retention-and-destruction policy results Article III injury. "An unlawful retention of biometric data inflicts a privacy injury in the same sense that an unlawful collection does." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1154-55 (7th Cir. 2020).

50. On information and belief, Defendant does not destroy a user's "biometric identifiers" or "biometric information" "within 3 years of the individual's last interaction with the private entity" as required by 740 ILCS 14/15(a).

51. As stated above, on information and belief, Defendant has violated Section 15(a) of BIPA by failing to publicly disclose data-retention schedules for the *permanent* destruction of "biometric identifiers" and/or "biometric information" acquired from its employees.

52. On information and belief, Defendant's violations of Section 15(a) of BIPA has resulted in the *unlawful retention* of Plaintiff and proposed class members' "biometric identifiers" and/or "biometric information".

53. Defendant's *failure to comply* with a retention-and-destruction policy has harmed Plaintiff and putative class members where Defendant's unlawful retention of "biometric identifiers" and/or "biometric information" *beyond* the time limits set by section 15(a). *See, e.g., Fox*, 980 F.3d at 1149 and 1155 (finding a "concrete and particularized" harm where the plaintiff alleged that the defendant violated the "full panoply" of section 15(a) requirements).

54. Defendant's failure to develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying the biometric identifiers and biometric information of Plaintiff and putative class members have caused Plaintiff and putative class members to suffer harm, and they are entitled to liquidated damages as provided by 740 ILCS 14/20(1)-(2).

55. The proposed Section 15(a) Class is defined as:

> All current and former employees of Defendant in the State of Illinois who had their "biometric information" and/or "biometric identifiers" collected, captured and otherwise obtained by Defendant's fingerprint and/or thumbprint based time clock technology during the relevant time period.

56. Common questions of law and fact exist as a result of Defendant's violations of BIPA.

57. Plaintiff's claims in this Count – that Defendant's fingerprint and/or thumbprint based time clock technology collected, captured and otherwise obtained

Plaintiff's "biometric information" and/or "biometric identifiers" and that Defendant failed to first create and distribute a written retention schedule and guidelines for permanently destroying biometric identifiers and biometric information as required by Section 15(a) of BIPA - is typical of the claims of putative class members.

58.  For example, one of the defenses that Defendant may assert against Plaintiff - that Defendant's fingerprint and/or thumbprint based time clock technology did not collect, capture and otherwise obtain Plaintiff's "biometric information" and/or "biometric identifiers" during the applicable statute of limitations – is typical of the defenses that Defendant may assert against putative class members.

59.  Another defense that Defendant may assert against Plaintiff - that Defendant created and distributed a written retention schedule and guidelines for permanently destroying biometric identifiers and biometric information - as required by Section 15(a) of BIPA is typical of the defenses that Defendant may assert against putative class members.

60.  Plaintiff will fairly and adequately protect the interests of the putative class members as Plaintiff seeks to vindicate statutory rights afforded by BIPA and because Plaintiff seeks to obtain declaratory, injunctive and monetary relief for all impacted class members.

61.  Plaintiff's counsel will fairly and adequately protect the interest of the putative class members. *See, e.g., Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2021 U.S. Dist. LEXIS 235401, *3 (N.D. Ill. Nov. 22, 2021) (appointing attorney James C. Vlahakis as provisional class counsel in putative class action involving the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act, with final approval being granted by Dkt. 134).

62. The proposed Section 15(a) Class should be certified to avoid inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

63. The proposed Section 15(a) Class should be certified to avoid adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

64. The proposed Section 15(a) Class should be certified because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

65. The proposed Section 15(a) Class should be certified because questions of law or fact common to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating the present controversy.

66. The proposed Section 15(a) Class is ascertainable from Defendant's records.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court provide Plaintiff and putative class members with the following relief:

    a. Liquidated damages for negligent violations of Section 15(a);
    b. Liquidated damages for intentional and/or reckless violations of Section 15(a);
    c. Reasonable attorney's fees and costs;
    d. Enjoining Defendant from further violations of Section 15(a);and
    e. Certifying the proposed Class set forth above.

**Count II – Asserting Violations of Section 15(b) of BIPA**

67. Plaintiff alleges and reasserts Paragraphs 1-40 as if fully set forth above:

68. In summary, Section 15(b) of BIPA requires private employer to obtain informed written consent from employees before a private employer can obtain the "biometric identifiers" and/or "biometric information" of employees.

69. BIPA defines "[w]ritten release" as "informed written consent". 740 ILCS 14/10.

70. Section 15(b) of BIPA specifically states that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first" takes the following actions:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

71. Section 15(b) ensures that "consumers understand, before providing their biometric data, how that information will be used, who will have access to it, and for how long it will be retained." *Id.*

72. Informed-consent is the "heart of BIPA." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020).

73. The failure to obtain consent before collecting an individual's biometric data necessarily inflicts an Article III injury. *Bryant*, 958 F.3d at 619, 624, 626

(comparing a violation of section 15(b) to "an invasion of [an individual's] private domain, much like an act of trespass").

74. As described below, Defendant violated Section 15(b) of BIPA because it collected Plaintiff's "biometric identifiers" and/or "biometric information" without first obtaining Plaintiff's informed written consent.

75. Further, Defendant violated Section 15(b) of BIPA because it collected the "biometric identifiers" and/or "biometric information" of putative class members without first obtaining their informed written consent.

76. In particular, Defendant violated of Section 15(b)(1) of BIPA by failing to inform Plaintiff and putative class members in writing that it was storing and/or collecting their "biometric identifiers" or "biometric information". 740 ILCS 14/15(b)(1).

77. Defendant violated of Section 15(b)(2) of BIPA by failing to inform Plaintiff and putative class members in writing of the specific purpose and length of term for which their "biometric identifiers" and/or "biometric information" was "being collected, stored, and used." 740 ILCS 14/15(b)(2).

78. Defendant violated of Section 15(b)(3) of BIPA by failing to obtain a written release executed by Plaintiff and putative class members before Defendant collected their "biometric identifiers" and/or "biometric information". 740 ILCS 14/15(b)(3).

79. Violations of Section 15(b) of BIPA result in concrete injuries. *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 624-26 (7th Cir. 2020).

80. The failure to obtain informed consent before collecting an individual's biometric data necessarily inflicts an Article III injury. *Bryant,* 958 F.3d at 619, 624, 626 (comparing a violation of Section 15(b) to "an invasion of [an individual's] private domain, much like an act of trespass").

81. Defendant's collection, use, modification, monetization and/or storage of Plaintiff and putative class members' "biometric identifiers" and/or "biometric information" - without informed written consent - violates Section 15(b).

82. As explained above, Defendant collected, used and/or stored Plaintiff and class members' their "biometric identifiers" and/or "biometric information" in violation of the prohibitions and requirements set forth by Section 15(b) of BIPA.

83. As explained above, Defendant did not obtain the informed written consent of Plaintiff and putative class members to collect, use, modify and/or store their "biometric identifiers" and/or "biometric information".

84. In summary, Defendant violated BIPA by collecting, using, modifying and/or storing the "biometric identifiers" and/or "biometric information" of Plaintiff and putative class members without their informed written consent.

85. Plaintiff and putative class members have suffered damages in the form of liquidated damages and provided by 740 ILCS 14/20(1)-(2).

86. The proposed Section 15(b) Class is defined as:

> All current and former employees of Defendant in the State of Illinois who had their "biometric information" and/or "biometric identifiers" collected, captured and otherwise obtained by Defendant's fingerprint and/or thumbprint based time clock technology during the relevant time period.

87. Common questions of law and fact exist as a result of Defendant's violations of BIPA.

88. Plaintiff's claims in this Count – that Defendant's fingerprint and/or thumbprint based time clock technology collected, captured and otherwise obtained Plaintiff's "biometric information" and/or "biometric identifiers" and that Defendant failed to first obtain express written consent to do so - as required by Section 15(b) of BIPA - is typical of the claims of putative class members.

89. For example, one of the defenses that Defendant may assert against Plaintiff - that Defendant's fingerprint and/or thumbprint based time clock technology did not collect, capture and otherwise obtain Plaintiff's "biometric information" and/or "biometric identifiers" during the relevant time period and applicable statute of limitations – is typical of the defenses that Defendant may assert against putative class members.

90. Another defense that Defendant may assert against Plaintiff - that Defendant obtained prior express written consent to capture and/or otherwise obtain Plaintiff's "biometric information" and/or "biometric identifiers" - as required by Section 15(b) of BIPA - is typical of the defenses that Defendant may assert against putative class members.

91. Plaintiff will fairly and adequately protect the interests of the putative class members as Plaintiff seeks to vindicate statutory rights afforded by BIPA and because Plaintiff seeks to obtain declaratory, injunctive and monetary relief for all impacted class members.

92. Plaintiff's counsel will fairly and adequately protect the interest of the putative class members. *See, e.g., Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2021 U.S. Dist. LEXIS 235401, *3 (N.D. Ill. Nov. 22, 2021) (appointing attorney James C. Vlahakis as provisional class counsel in putative class action involving the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act, with final approval being granted by Dkt. 134).

93. The proposed Section 15(b) Class should be certified to avoid inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

94. The proposed Section 15(b) Class should be certified to avoid adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

95. The proposed Section 15(b) Class should be certified because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

96. The proposed Section 15(b) Class should be certified because questions of law or fact common to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating the present controversy.

97. The proposed Section 15(b) Class is ascertainable from Defendant's records.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court provide Plaintiff and putative class members with the following relief:

a. Liquidated damages for negligent violations of Section 15(b);
b. Liquidated damages for intentional and/or reckless violations of Section 15(b);
c. Reasonable attorney's fees and costs;
d. Enjoining Defendant from further violations of Section 15(b);and
e. Certifying the proposed Class set forth above.

## Jury Demand

Plaintiff demands a jury trial.

| | |
|---|---|
| **James C. Vlahakis**<br>James C. Vlahakis<br>Senior Counsel<br>Sulaiman Law Group, Ltd.<br>2500 S. Highland Ave. Suite 200<br>Lombard, IL 60148<br>630-581-5456<br>Fax: 630-575-8188<br>jvlahakis@sulaimanlaw.com | Dated: 12/20/2022 |