IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEREMIAH M. GREENWOOD, individually and on behalf of others similarly situated, | ) ) ) ) ) No. 1:22-cv-7169-RAG |
| Plaintiff, | ) ) Hon. Ronald A. Guzman |
| v. | ) ) |
| FIVE GUYS OPERATIONS, LLC, | ) ) |
| Defendant. | ) |

**DEFENDANT FIVE GUYS OPERATIONS, LLC'S
MOTION TO COMPEL ARBITRATION
AND STAY PLAINTIFF'S CLASS ACTION COMPLAINT**

Erin Bolan Hines (#6255649)
Andrew L. Franklin (#6338983)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
Tel: (312) 704-7700
ehines@shb.com
afranklin@shb.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ......................................................................................................................... 1

BACKGROUND ........................................................................................................................... 1

      A.      Plaintiff's Arbitration Agreements ........................................................................... 1

      B.      Plaintiff's Class Action Allegations ......................................................................... 3

PROCEDURE AND LEGAL STANDARD ................................................................................. 3

ARGUMENT ................................................................................................................................. 4

I.     PLAINTIFF'S CLAIMS BELONG IN INDIVIDUAL ARBITRATION. ............................ 4

      A.      Plaintiff entered into a binding and enforceable agreement to arbitrate. ................. 4

      B.      Plaintiff's claims are squarely within the scope of the agreement. ......................... 5

      C.      Plaintiff refuses to arbitrate. ...................................................................................... 6

      D.      This Court should decide class arbitrability. ............................................................ 6

      E.      The arbitration agreement is not susceptible to class arbitration. ......................... 10

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

Page

**Cases**

*A.D. v. Credit One Bank, N.A.*,
  885 F.3d 1054 (7th Cir. 2018) ................................................................................3

*Armbrister v. Pushpin Holdings, LLC*,
  896 F. Supp. 2d 746 (N.D. Ill. 2012) .......................................................................6

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) .................................................................................................4

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ..............................................................................................4, 5

*Blanton v. Domino's Pizza Franchising LLC*,
  962 F.3d 842 (6th Cir. 2020) ...................................................................................8

*Carey v. Richards Bldg. Supply Co.*,
  856 N.E.2d 24 (Ill. App. Ct. 2006) ..........................................................................4

*Davis v. Fenton*,
  857 F.3d 961 (7th Cir. 2017) ...............................................................................3, 4

*Epic Systems Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) .............................................................................................7

*Gore v. Alltel Commc'ns, LLC*,
  666 F.3d 1027 (7th Cir. 2012) .................................................................................4

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
  561 U.S. 287 (2010) .................................................................................................7

*Herrington v. Waterstone Mortg. Corp.*,
  907 F.3d 502 (7th Cir. 2018) ........................................................................ *passim*

*LAIF X SPRL v. Axtel, S.A. de C.V.*,
  390 F.3d 194 (2d Cir. 2004) ....................................................................................6

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019) ..................................................................................1, 10, 11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .....................................................................................................4

*Stolt-Nielsen, S.A. v. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ............................................................................................ *passim*

*Tinder v. Pinkerton Sec.*,
   305 F.3d 728 (7th Cir. 2002) ............................................................................................ 4

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
   489 U.S. 486 (1989) ................................................................................................... 5, 10

**Statutes**

740 ILCS 14/1 *et seq.* ........................................................................................................ 1, 3

740 ILCS 14/15 ...................................................................................................................... 3

9 U.S.C. §§ 1 *et seq.* .................................................................................................. *passim*

9 U.S.C. § 2 ........................................................................................................................... 4

9 U.S.C. § 3 ..................................................................................................................... 3, 11

9 U.S.C. § 4 ........................................................................................................................... 3

9 U.S.C. § 9 ........................................................................................................................... 4

**INTRODUCTION**

Defendant Five Guys Operations, LLC ("Five Guys") owns and manages a number of burger and fries fast-food restaurants across Illinois. Five Guys is well known for its high-quality burgers and generous fry portions.

Five Guys operates corporate-owned stores in Illinois and across the United States. Separately, Five Guys licenses its brand for franchising by distinct entities, which do not fall under the Five Guys Operations umbrella. For purposes of this Motion and Plaintiff's Complaint, "Five Guys" will refer to Five Guys Operations, including the corporate-owned stores for which Plaintiff worked. Five Guys employees agree to arbitration twice in the hiring process: once in the application for employment, and again in the Employee Handbook executed during onboarding. All Five Guys employees are subject to the Employee Handbook's Arbitration Agreement.

Despite agreeing to arbitrate any employment-related claims, Plaintiff Jeremiah M. Greenwood ("Plaintiff" or "Greenwood") filed this putative class action complaint on December 20, 2022, contending that Five Guys' finger-sensor timekeeping system violates the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. Under settled United States Supreme Court precedent, Plaintiff's Arbitration Agreement waives the availability of class arbitration. *See Stolt-Nielsen, S.A. v. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019). The Court should compel individual arbitration of Plaintiff's claim, and administratively dismiss or stay the instant suit.

**BACKGROUND**

A.  **Plaintiff's Arbitration Agreements**

Plaintiff applied to work at Five Guys in June, 2016. Declaration of Erin Roberts, hereinafter "Roberts Dec.," *attached* as Exhibit A, ¶ 8. Plaintiff's application for employment, contains the following provision:

1

> Because of the delay and expense of the court systems, Five Guys and I agree to use *confidential* binding arbitration, instead of going to court, for any claims that arise between me and Five Guys, its related companies, and/or their current or future employees. This includes any claims concerning compensation, *employment*, sexual or other types of harassment, or termination of employment. Before arbitration, I agree first to present any claims in writing and in full detail to Five Guys; and next, to complete any Five Guys internal review process. Nothing in this agreement to arbitrate shall prevent me from filing a claim with any external administration or agency (such as the EEOC or similar state or local agency). In any arbitration, the then prevailing rules of the American Arbitration Association (and, to the extent not inconsistent, the Federal Arbitration Act) shall apply.

Roberts Dec., ¶ 8 (emphasis added). This clause is housed under the "Employment Agreement & Arbitration of Employee Rights" section—it is worth noting that the section title is bolded, underlined, and in all caps, and beneath it is a sub-heading that instructs "**PLEASE READ CAREFULLY AND SIGN BELOW**." *Id.* Greenwood signed the application agreement on June 27, 2016. *Id.* (hereinafter, the "June Agreement").

Five Guys subsequently hired Greenwood, and he completed his onboarding paperwork on November 2, 2016. *Id.* at ¶ 9. The onboarding paperwork included the Five Guys Employee Handbook, and a full-page arbitration agreement therein, which remains a part of Five Guys Operations' onboarding documents. *Id.* (hereinafter, the "November Agreement"). The November Agreement states that "Employee and Company agree that if any dispute arises from Employee's application or candidacy for employment, employment and/or cessation of employment with Company, it will be submitted to final and binding arbitration." *Id.* To remove all doubt, further down it reiterates, "[b]y signing below, Employee acknowledges that he or she has carefully read the above provisions relating to *the resolution of any and all disputes or controversies through arbitration that arise out of Employee's employment with Company*." *Id.* (emphasis added).

### B. Plaintiff's Class Action Allegations

Greenwood disregarded his obligations under both the June Agreement and full November Agreement when he filed this putative class action complaint. He also failed to honor the June Agreement's Five Guys internal review procedure prior to arbitration of his claim. *Id.* at ¶ 8. Greenwood alleges on behalf of the putative class that Five Guys violated Sections 15(a) and (b) of BIPA by failing to develop a publicly available data retention and destruction policy, by failing to destroy employees' data, and by failing to follow the statutory notice and consent procedure before collecting or capturing employees' data. *See generally,* Pl.'s Class Action Compl., Counts I–II.

### PROCEDURE AND LEGAL STANDARD

Five Guys brings its Motion to Compel Arbitration pursuant to § 4 of the Federal Arbitration Act ("FAA"). 9 U.S.C. § 4. The FAA "evinces a national policy favoring arbitration" and "requires federal courts to place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059-60 (7th Cir. 2018) (internal quotation marks and citations omitted). The Court will compel arbitration under the FAA "if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Id.* at 1060.

Further, Five Guys seeks a stay (or administrative dismissal) of the matter pending arbitration. "[T]he Federal Arbitration Act, 9 U.S.C. § 3, provides that when the parties to a dispute litigable in federal court have a written agreement to arbitrate their dispute, either of the parties is entitled to stay the trial of the action until the arbitration is complete, provided that the applicant for the stay is not in default of its obligations in the arbitration." *Davis v. Fenton*, 857 F.3d 961, 962 (7th Cir. 2017). A "judge's order staying the case (or, equivalently, administratively

3

dismissing it subject to reinstatement at the conclusion of arbitration)" meant that the judge "retained jurisdiction to confirm or vacate an arbitral award" pursuant to 9 U.S.C. § 9. *Id.* at 962.

## ARGUMENT

I. **PLAINTIFF'S CLAIMS BELONG IN INDIVIDUAL ARBITRATION.**

   A. **Plaintiff entered into a binding and enforceable agreement to arbitrate.**

Greenwood's arbitration agreements, in both his application and onboarding paperwork, are plain and clear, and therefore enforceable. Under the FAA, 9 U.S.C. §§ 1 *et seq.*, agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity[.]" 9 U.S.C. § 2. Federal law recognizes a "presumption of arbitrability." *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) ("[The Supreme Court's] cases place it beyond dispute that the FAA was designed to promote arbitration.").

Whether a binding arbitration agreement exists is determined under principles of state contract law. *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). Because all relevant events occurred in Illinois, Illinois law determines the validity of the agreement. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002). Under Illinois law, where the language of a contract is plain, the agreement is enforced as written. *Gore*, 666 F.3d at 1033 (citing *Carey v. Richards Bldg. Supply Co.*, 856 N.E.2d 24, 27 (Ill. App. Ct. 2006)).

Greenwood not once, but twice agreed to arbitrate employment claims, controversies, or disputes. *See* Ex. A. He did so after being exhorted to "Please Read Carefully," and after separately being instructed that, "[b]y signing below, Employee acknowledges that he or she has carefully read the above provisions relating to the resolution of any and all disputes or controversies through arbitration that arise out of Employee's employment with Company." *Id.* at ¶¶ 8–9. The full-page

4

November Agreement requires Greenwood to arbitrate "any dispute" that "arises from Employee's … employment." *Id.* at ¶ 9. It proceeds to broadly define "dispute,": "the term 'dispute' includes *every kind or type of claim or controversy*, but not limited to, any allegation of failure to pay wages owed, wrongful discharge, discrimination, or any injury to Employee's physical, mental or economic interests not covered by workers' compensation." *Id.* (emphasis added). Greenwood is bound by these plain, and therefore enforceable, Agreements.

### B. Plaintiff's claims are squarely within the scope of the agreement.

The presumption of coverage skews in Five Guys' favor. "[U]nless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," enforcement of the arbitration clause is proper. *AT&T Techs.*, 475 U.S. at 650 (noting "[d]oubts should be resolved in favor of coverage."); *see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 486, 476 (1989) ("[D]ue regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."). When an arbitration clause is particularly broad, "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs.*, 475 U.S. at 650.

Greenwood's employment is a "but for" cause of this lawsuit. One need go no further than the Complaint to discover this,

> 10. Plaintiff is a former shift manager of Defendant.
> 11. During Plaintiffs employment with Defendant, Plaintiff worked at Defendant's Berwyn, Illinois restaurant as well as a restaurant located in Wheaton, Illinois location.
> 12. *Prior to, during and after Plaintiffs <u>employment with Defendant</u>, Defendant utilized a time clock system that required Plaintiff and other employees to scan and input their fingerprints or thumbprints to log in and out of Defendant's time clock system.*

5

Pl.'s Class Action Compl., ¶¶ 10–12. Time clock systems are almost always linked to employment. Since the late 19th Century, time clocks have been used to track employee's hours for the purposes of pay.[1] So too here, Greenwood's and his co-workers' time was tracked via time clock. *See* Pl.'s Class Action Compl. But for Greenwood's employment at Five Guys, Greenwood would not have been asked to clock in and out using the allegedly BIPA-infringing finger clock.

Therefore, this suit is couched comfortably within arbitration clauses that govern all disputes arising out of Greenwood's employment. *See* Ex. A, ¶¶ 8–9.

### C. Plaintiff refuses to arbitrate.

Prior Northern District courts have held, consistent with at least two circuits, that the filing of a law suit is *per se* refusal to arbitrate. *Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746, 753 (N.D. Ill. 2012) (citing with approval *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004) ("A party has refused to arbitrate if it commences litigation or is ordered to arbitrate th[e] dispute [by the relevant arbitral authority] and fails to do so.")).

Thus, Greenwood has refused to arbitrate. Counsel for Five Guys conferred with Plaintiff's counsel prior to filing this Motion in an attempt to obviate the need for motion practice. However, Plaintiff's counsel attempted to condition submission to arbitration in contravention of his client's plain Agreements.

### D. This Court should decide class arbitrability.

In *Herrington*, then-Judge Barrett set in stone for the panel the answer to a question that had eluded the Seventh Circuit. "The availability of class or collective arbitration is a threshold question of arbitrability." *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 503–504 (7th

---

[1] Time Clock, Wikipedia, https://en.wikipedia.org/wiki/Time_clock (the introductory sentence: "A time clock, sometimes known as a clock card machine or punch clock or time recorder, is a device that records start and end times for hourly employees (or those on flexi-time) at a place of business."); *see also* U.S. Patent No. 452,894 (May 26, 1891) ("Workmans Time Recorder").

Cir. 2018) (noting the Supreme Court has reserved the question and it was previously unresolved in the Seventh Circuit). In *Herrington*, the plaintiff filed class and collective actions against her former employer alleging wage and hour violations. *Id.* at 503. The arbitration agreement included a waiver clause that forbid class and collective arbitration. *Id.* At the time of the initial lawsuit, the waiver was unenforceable in the Seventh Circuit under the National Labor Relations Act; however, the appeal came to the Seventh Circuit after the Supreme Court ruled in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018), that class and collective action waivers did not conflict with the NLRA. *Id.* at 506. Thus, the validity of the waiver was on solid footing, and the *Herrington* panel was left to determine "who has that job" of interpreting the agreement and resolving the question— the court or the arbitrator. *Id.* at 503, 506.

The panel found that it is the court's job to interpret the agreement. *Id.* at 507. It reasoned that class susceptibility is a foundational question of arbitrability, rather than subsidiary or procedural, because 1) it resolves the question of "with whom" the parties agreed to arbitrate, and 2) it resolves the question of what disputes and controversies are covered by the agreement. *Id.* at 508. The court clarified the latter point, "[plaintiff]'s contract with [defendant] required arbitration of employment-related disputes 'between them or arising out of their employment relationship.' But [plaintiff] requested that the arbitration resolve not only the disputes 'between them,' but also disputes between [defendant] and many other employees." *Id.* at 508–509 (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (explaining that a court may order arbitration of a dispute "only where the court is satisfied that the parties agreed to arbitrate *that dispute*.") (emphasis in original)). Finally, and most importantly according to the panel, "'Fundamental' questions belong in the 'gateway' category and the Supreme Court has repeatedly

7

emphasized that the structural features of class arbitration make it a 'fundamental' change from the norm of bilateral arbitration." *Id.* at 509 (citing *Stolt-Nielsen*, 559 U.S. at 686).

It is true, and the *Herrington* panel acknowledged, that "the parties can agree to delegate to an arbitrator the question whether an agreement authorizes class or collective arbitration." *Id.* at 507 n.3. However, "[i]n that circumstance, the agreement must 'clearly and unmistakably provide' for such delegation." *Id.* There is a circuit split, into which the Seventh Circuit has not waded, about whether the incorporation of American Arbitration Association rules in an arbitration agreement is clear and unmistakable evidence of delegation of the arbitrability of class availability. *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 850–851 (6th Cir. 2020) (explaining that the 3rd, 6th, and 8th Circuits have held that class arbitrability is in a special category, and requires more than mere reference to AAA, because of the "unique concerns raised by classwide arbitration" and "the different structure of the rules;" while, the 2nd, 10th, and 11th consider questions of arbitrability to be a unitary class, and find that reference to the AAA is clear and unmistakable delegation of class and other questions). The AAA Supplementary Rules for Class Arbitration themselves provide that "[i]n construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis." AAA, Supp. Rules for Class Arbitration, R. 3. Finally, and perhaps most persuasively, the agreement at issue in *Herrington* contained a AAA reference: employment disputes "shall be resolved through binding arbitration in accordance with the rules of the American Arbitration Association applicable to employment claims." *Herrington*, 907 F.3d at 504. Yet, the panel in no uncertain terms held that "[o]n remand, *the district court, rather than the arbitrator, must evaluate*

*[plaintiff]'s contract with [defendant] to determine whether it permits class or collective arbitration.*" *Id.* at 504, 511 (emphasis added).

Here, Greenwood's full arbitration agreement, the November Agreement, refers to the AAA rules only once, and in a nearly identical manner as *Herrington*: "[e]xcept as provided below, the procedure for arbitration will be based on the rules for the resolution of employment disputes of the American Arbitration Association, and to the extent applicable the provisions of the Federal Arbitration Act (9 USC §1 et seq.)…." Ex. A, ¶ 9. The June Agreement refers to them also, but is even less specific, "[i]n any arbitration, the then prevailing rules of the American Arbitration Association (and, to the extent not inconsistent, the Federal Arbitration Act) shall apply." Ex. A, ¶ 8. There is no explicit incorporation of the AAA Supplementary Rules for Class Arbitration, and no clear and unmistakable delegation of the question of class arbitrability. Further, the June Agreement calls for "confidential binding arbitration." Ex. A, ¶ 8; *but see*, *Stolt-Nielsen*, 559 U.S. at 686 ("Under the [AAA] Class Rules [9(a)], 'the presumption of privacy and confidentiality' that applies in many bilateral arbitrations '*shall not apply in class arbitrations*,'" (emphasis added)). Moreover, similar to the "between them"—i.e., between employee and company—language that the *Herrington* court pointed to in deciding which controversies the arbitration agreement covers, the November Agreement states, "[Jeremiah Greenwood] and [Five Guys] agree that if any dispute arises from [Greenwood]'s application or candidacy for employment, employment and/or cessation of employment with [Five Guys], it will be submitted to final and binding arbitration." *Herrington*, 907 F.3d at 508; Ex. A, ¶ 9 (emphasis added). The November Agreement is specific to disputes and controversies between Five Guys and Greenwood—it always uses the singular "employee" and does not contend with disputes that arise out of anyone else's employment with Five Guys. *See id.* When the Seventh Circuit has underscored the foundational nature of

9

determinations of with whom arbitration is to take place, and which controversy is covered under an arbitration agreement, questions of class availability, without more, should be left to the Court. After all, class arbitrability is a fundamental question because class arbitration is a marked shift "from the norm of bilateral arbitration." *Herrington*, 907 F.3d at 509 (citing *Stolt-Nielsen*, 559 U.S. at 686).

### E. The arbitration agreement is not susceptible to class arbitration.

Much easier than the "who decides" question is the ultimate outcome of the class arbitrability question: class arbitration is *not* available. Supreme Court precedent on this point is abundantly clear. "[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielsen*, 559 U.S. at 684. "We think that the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Id.* at 687. The reason for this conclusion is that "the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration "is a matter of consent, not coercion." *Id.* at 681 (citing *Volt*, 489 U.S. at 479). Consent is necessary because at root an arbitrator's "limited" powers are derived from the parties' agreement. *Id.* at 682. Thus, it would upset the agreement if "the principal advantage of arbitration"—"informality" born of "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes"—were sacrificed. *Lamps Plus*, 139 S. Ct. at 1416. This would be akin to buying a Ford Mustang and instead receiving an actual horse; it is not what you bargained for, it is harder to tame, and it is a lot slower.

The Supreme Court extended *Stolt-Nielsen* in 2019. "We therefore face the question whether, consistent with the FAA, an ambiguous agreement can provide the necessary 'contractual

basis' for compelling class arbitration. We hold that it cannot—a conclusion that follows directly from our decision in *Stolt-Nielsen*." *Id.* at 1415. Notably, the underlying arbitration agreement in *Lamps Plus* indicated that the arbitration would be administered subject to AAA or JAMS rules, but did not indicate that the Supplementary Rules for Class Actions would apply. Brief for Petitioner at 16 n.6, *Lamps Plus*, 139 S. Ct. 1407 (2019), No. 17-988, 2018 WL 389119 (U.S.), at *16. Still, the Supreme Court held that class arbitration was not available.

At worst, the June and November Agreements are ambiguous as to class availability. Even likelier, they are silent. They do not expressly incorporate the AAA Supplementary Rules for Class Arbitration, they call for confidential binding arbitration, and they pertain specifically to disputes arising from "[Greenwood]'s…employment." Ex. A, ¶¶ 8–9.

## CONCLUSION

For these reasons, Five Guys requests that the Court compel individual, non-class arbitration of Plaintiff's Complaint, and stay (or administratively dismiss) this suit pursuant to 9 U.S.C. § 3.

Dated:  February 24, 2023
　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　**FIVE GUYS OPERATIONS, LLC**

　　　　　　　　　　　　　　　　　　By:  */s/ Erin Bolan Hines*

　　　　　　　　　　　　　　　　　　Erin Bolan Hines (#6255649)
　　　　　　　　　　　　　　　　　　Andrew L. Franklin (#6338983)
　　　　　　　　　　　　　　　　　　**SHOOK, HARDY & BACON L.L.P.**
　　　　　　　　　　　　　　　　　　111 South Wacker Drive, Suite 4700
　　　　　　　　　　　　　　　　　　Chicago, IL 60606
　　　　　　　　　　　　　　　　　　Tel:  (312) 704-7700
　　　　　　　　　　　　　　　　　　Fax:  (312) 558-1195
　　　　　　　　　　　　　　　　　　ehines@shb.com
　　　　　　　　　　　　　　　　　　afranklin@shb.com

　　　　　　　　　　　　　　　　　　***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

      I, Erin Bolan Hines, an attorney, hereby certify that on **February 24, 2023**, I caused a true and correct copy of the foregoing document to be filed with the Clerk through the Court's CM/ECF System, which will send electronic notification to all counsel of record.

                                         */s/ Erin Bolan Hines*